UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

GEORGE ALEXANDROU and KEVIN CAIN,

                                Plaintiffs,

                                **MEMORANDUM & ORDER**
         -against-                       11-CV-5240 (PKC) (GRB)

SAMUEL FROMKIN,

                                Defendants.
----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

      Plaintiffs Kevin Cain ("Cain") and George Alexandrou ("Alexandrou") (together, "Plaintiffs") bring this action for breach of contract, unjust enrichment, and fraudulent misrepresentation against Defendant Samuel Fromkin ("Fromkin").

      In 2002, Fromkin loaned $197,000 to his then-son-in-law Steven Ship ("Ship") and Ship's business partner Cain in connection with their venture, a music company known as King Biscuit. King Biscuit subsequently failed and could not repay Fromkin in full. Fromkin agreed to accept $75,000, rather than seeking return of the full loan amount, and signed a release to that effect (the "Release"). The Release prohibited Fromkin from asserting claims, or assisting any "third-party" in asserting claims, against King Biscuit. Subsequent to Fromkin's execution of the Release and his receipt of the $75,000, Ship instituted litigation, unrelated to Fromkin, against his former partner Cain and Cain's other business partner, Alexandrou (the "Ship Litigation"). There, Ship claimed he was a King Biscuit shareholder and was thus entitled to compensation in connection with King Biscuit's sale of certain assets. The action now before the Court arises out of Fromkin's alleged involvement in the Ship Litigation.

Specifically, the Plaintiffs allege that Fromkin, in contravention of the Release, (1) obtained an interest, financial or otherwise, in the Ship Litigation; and/or (2) assisted Ship, financially or otherwise, in connection with the Ship Litigation. Because Ship cannot be considered a King Biscuit "third party" whom the Release prohibited Fromkin from assisting, and because, moreover, Plaintiffs have provided no evidence that they suffered damages as a result of Fromkin's alleged involvement in the Ship Litigation, Fromkin's motion for summary judgment is granted.

Fromkin also moves for sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"). However, because Fromkin has only established that Plaintiffs' case is meritless, but not that it was brought for an improper purpose, his motion for sanctions is denied.

## BACKGROUND

### I. Local Rule 56.1

Pursuant to Local Civil Rule 56.1, Fromkin properly submitted a statement of undisputed material facts ("Rule 56.1 Statement") to Plaintiffs and the Court. Though Plaintiffs submitted their own cursory 56.1 Statement, they failed to respond to Fromkin's 56.1 Statement as required by Local Rule 56.1(b). *See* Local Rule 56.1(b) (directing that the non-moving party's 56.1 Statement include responses to each factual statement of the moving party). Where, as here, the non-moving party has failed to properly respond, the Local Rules provide that the facts set forth in the moving party's 56.1 Statement "will be deemed to be admitted for purposes of the motion." Local Rule 56.1 (c). However, a district court "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file" a 56.1 Statement. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations and quotation marks omitted). Having conducted such a review, the Court cites to only those facts in Fromkin's 56. 1

that are supported by the record. Those relevant to the resolution of this litigation are recited below.

## II. Relevant Facts

In 2002, Fromkin, at Ship's request, loaned $197,000 to Ship and Cain to provide cash flow for their music company, King Biscuit Entertainment Group ("King Biscuit").[1] (Def. 56.1 ¶ 1; Dkt. 12-3.)[2] At the time, Ship was Fromkin's son-in-law, and Cain was Ship's business partner. (Def. 56.1 ¶ 2.) In exchange for the loan, Cain, King Biscuit's Co-Chief Executive Officer, executed Credit Demand Notes in the amount of $197,000 in favor of Fromkin. (*Id.* at 1; Dkt. 12-3.) In June of 2004, King Biscuit advised Fromkin, via letter ("Dkt. 12-4"), that it had signed a "letter of intent" with a potential buyer for the sale of certain King Biscuit assets, and intended to use the proceeds to, among other things, repay Fromkin's loan in full. (*Id.* at 3; Dkt. 12-4.)

King Biscuit subsequently experienced financial difficulty, and Fromkin agreed to settle the amount due to him from King Biscuit for $75,000, rather than pursue the full $197,000 owed pursuant to the Credit Demand Notes. (*See* the Release dated 10/25/05 ("Dkt. 12-6").) In exchange for the $75,000 payment, Fromkin executed the Release in favor of King Biscuit on October 25, 2005.[3] (*Id.*) The Release defines the King Biscuit parties as:

---

[1] According to the Credit Demand Notes executed by Cain in favor of Fromkin ("Dkt. 12-3"), the full list of King Biscuit associated entities to which Fromkin loaned money include: King Biscuit Entertainment Group, Inc., King Biscuit Flower Hour Records, Inc., King Biscuit Music, Inc., KB Radio Corp., Win Media, LLC, and Oxygen Records, Inc.

[2] Citations to "Def. 56.1" refer to Fromkin's 56.1 Statement. (Dkt. 12-1.)

[3] Fromkin had initially executed a release in favor of King Biscuit on September 25, 2005 ("First Release"), but that release was superseded by the October 25, 2005 release, which is at the heart of this litigation (*i.e.,* the Release). Fromkin contends that the Release is void because Plaintiffs did not provide additional consideration to Fromkin despite adding additional

3

> "King Biscuit Entertainment Group, Inc., King Biscuit Flower Hour Records, Inc., King Biscuit Music, Inc., KB Radio Corp., Win Media LLC and Oxygen Records, Inc., and their respective **former and present** shareholders, members, officers (including, without limitation, Kevin Cain and George Alexandrou), directors, agents, representatives, predecessors, successors, assigns, parent companies, affiliates, **employees** and attorneys (individually and collectively, the "King Biscuit Parties") of and from any and all claims . . . ."

(Dkt. 12-6) (emphasis added).

The Release went on to explain the specific actions that Fromkin was prohibited from taking against the King Biscuit parties:

> Fromkin hereby covenants and agrees that he will not in the future commence any legal proceedings against the King Biscuit Parties (or any other parties) in respect of any of the claims being released hereby; nor shall he assist or facilitate any **third-party** in asserting any claims, of any nature, against the King Biscuit Parties.

(*Id.*) (emphasis added).

Subsequent to Fromkin's execution of the Release, Ship instituted litigation against King Biscuit, Cain, and others in New York State Court concerning Ship's financial interest in the sale of certain King Biscuit assets. (Def. 56. 1 ¶ 7; Stockwell Decl., Ex. E ("Dkt. 12-7").) In a responsive pleading verified by Cain on behalf of King Biscuit ("Verified Answer with Counterclaims"), Cain and King Biscuit admitted that Ship had been employed with King Biscuit as the company's President, and was subsequently appointed to the Board of Directors and named the Company's co-CEO. (Dkt. 12-7 at 11, ¶ 5.) Throughout the Verified Answer with Counterclaims, King Biscuit references Ship's status as a former King Biscuit employee, if only to disparage his capabilities. (Dkt. 12-7 at 11-13.) King Biscuit and Ship eventually settled their

---

prohibitions, namely the prohibition against providing assistance to third-parties in connection with litigations against King Biscuit. However, because the Court finds for Fromkin on the grounds describe *infra*, it does not reach the question of whether ample consideration was provided to make the Release viable.

litigation, and reduced the terms of the settlement to writing ("Ship Settlement"). (Def. 56.1 ¶ 9.)

## DISCUSSION

### I. Summary Judgment Standard of Review

Summary judgment is proper only where, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of Parole,* 678 F.3d 166, 173-74 (2d Cir. 2012). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material where it "might affect the outcome of the suit under the governing law." *Id.* In determining whether there are genuine disputes of material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003) (citation and quotation omitted).[4]

This standard imposes the initial burden on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. *Id.* at 324*; see also Anderson*, 477 U.S. at 256-57. The nonmoving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [their] version of the events is not wholly fanciful."

---

[4] This standard, however, must be applied in tandem with Local Rule 56.1, which requires the non-moving party to respond to facts set forth in the moving party's 56.1 statement, and permits the Court to deem admitted any unopposed facts that are supported by the record.

*D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998) (collecting cases). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita v. Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587).

## II. <u>Fromkin's Motion for Summary Judgment</u>

Plaintiffs assert claims for breach of contract, unjust enrichment, and fraudulent misrepresentation against Fromkin. Fromkin moves for summary judgment on each claim.

### A. <u>Breach of Contract</u>

Plaintiffs allege that Fromkin breached the Release by assisting Ship and/or gaining an interest in the Ship Litigation. (Dkt. 15 ("Pl. Op." at 4-5.)

"A release is a contract, and its construction is governed by contract law." *See Kaminsky v. Gamache*, 298 A.D.2d 361, 361, 751 N.Y.S.2d 254 (2d Dep't 2002) (citation omitted). Under New York law, a plaintiff must satisfy the following elements to make out a breach of contract claim: (1) the existence of a valid contract; (2) performance of the plaintiff's obligations under the contract; (3) defendant's breach of the contract; and (4) resulting damages. *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC,* 631 F.3d 42, 52 (2d Cir. 2011) (citations omitted); *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). Here, the only questions are whether Fromkin breached the Release and, if so, whether Plaintiffs were damaged as a result. Based on the record, taken as a whole, Plaintiffs cannot satisfy either element.

### 1. Fromkin Could Not Have Breached the Release Because Ship Was Not a Third Party

Fromkin could not have breached the Release because Ship was not a "third-party" whom the Release prohibited Fromkin from assisting in litigation against King Biscuit. The language in the Release is clear; Fromkin executed the Release *in favor* of:

> "King Biscuit Entertainment Group, Inc., King Biscuit Flower Hour Records, Inc., King Biscuit Music, Inc., KB Radio Corp., Win Media LLC and Oxygen Records, Inc., and their respective **former and present** shareholders, members, officers (including, without limitation, Kevin Cain and George Alexandrou), directors, agents, representatives, predecessors, successors, assigns, parent companies, affiliates, **employees** and attorneys (individually and collectively, the "King Biscuit Parties") of and from any and all claims . . . ."

(Dkt. 12-6.)

Fromkin was, at minimum, a former employee of King Biscuit. Cain swore under penalty of perjury, in the Answer with Counterclaims, that in or about mid-to-late 1996, "Ship accepted employment with [King Biscuit] as the Company's President." (Dkt. 12-7.) Indeed, based on this admission, Ship would also qualify as an "officer," "agent," and "representative" of King Biscuit for purposes of the Release. The provision of the Release that Plaintiffs allege Fromkin breached specifically prohibited Fromkin from "assist[ing] or facilitat[ing] any **third-party** in asserting any claims, of any nature, against the King Biscuit Parties." (Dkt. 12-6) (emphasis added.) By the express and unambiguous terms of the Release, Ship was a released King Biscuit Party, not a "third-party." *See Kaminsky*, 298 A.D.2d at 361, 751 N.Y.S.2d 254 ("Where a release is unambiguous, the intent of the parties must be ascertained from the plain language of the agreement.") Therefore, even taking Plaintiffs allegations as true, Fromkin could not have breached the subject covenant in the Release.[5]

---

[5] Furthermore, Plaintiffs have put forth no "hard evidence" suggesting that Fromkin did, in fact, assist Ship or gain an interest in the Ship Litigation. *See D'Amico v. City of N.Y.*, 132 F.3d

Plaintiffs' only argument on this issue is that under the "rule of the last antecedent," the term "former" modifies only the term "shareholders," not "employees" or any other terms, and because Ship was never a shareholder of King Biscuit, he is not a released "party," and is instead a "third-party" whom Fromkin was prohibited from assisting in litigation against King Biscuit. (Pl. Op. at 7.) This argument, however, is patently incorrect. First, Plaintiffs misunderstand the "rule of the last antecedent," which holds that a limiting clause that appears *after* a list should generally only apply to the last antecedent that it could modify. *Barnhart v. Thomas*, 540 U.S. 20, at 27-28 (2003); *F.T.C. v. Mandel Bros., Inc.*, 359 U.S. 385, 389 (1959) (where the term "invoice" was defined as "a written account, memorandum, list, or catalog . . . transported or delivered to a purchaser, consignee, factor, bailee, correspondent, or agent, *or any other person who is engaged in dealing commercially* in fur products or furs,' the Court found that the words "engaged in dealing commercially" applied only to the last antecedent "any other person" and

---

at 149. The purported "evidence" on which Plaintiffs rely is two-fold: (1) Ship, through his attorney, requested the insertion of a provision in the Ship Settlement agreement that would permit Ship to convey the terms of the agreement to certain persons, including Fromkin (Super Decl., Ex. C (Dkt. 15)); and (2) Ship refused to sign an affidavit in connection with the Ship Settlement asserting that Fromkin did not have a financial interest or assist in the Ship Litigation (Super Decl., Ex. E ("Dkt. 15, Ex. E")). (Pl. Op. at 6-7.) From these facts, Plaintiffs seek an inference that the reason for these two events is that Ship intended to have Fromkin assist him in initiating litigation against King Biscuit and that Fromkin did so, thereby breaching the Release. These inferences, however, are contradicted, in part, by Ship's testimony that his motivation for including the provision allowing him to discuss the Ship Settlement with Fromkin was that Ship wanted to be able to assure Fromkin, if the two spoke, that Ship did not "profit personally" from his dealings with King Biscuit "at Fromkin's expense." (Dkt. 15, Ex. E; Dkt. 12-10 at 29:5-12.)

Furthermore, the lack of "hard evidence" of Fromkin's breach is compounded by the direct evidence of non-breach: Fromkin and Ship both testified that Fromkin did not (1) receive any funds from Ship (Stockwell Decl., Ex. G ("Dkt. 12-9"), p. 21:6-8; Ex. H ("Dkt. 12-10"), pp. 38-39), (2) provide advice to Ship regarding King Biscuit or Plaintiffs (Dkt. 12-9 at 34:8-21), or (3) gain an interest in the Ship Litigation. (Id. at 42:14-21). Thus, whether Plaintiffs have adduced sufficient evidence regarding an actual breach to defeat a motion for summary judgment is a close question, which need not be resolved given the alternate grounds for granting summary judgment in this case.

not to all the other preceding terms) (emphasis added); *see also In re Enron Creditors Recovery Corp.,* 422 B.R. 423, 433-34 (S.D.N.Y. 2009) (applying the term "commonly used in the securities trade" to modify only the antecedent that directly *preceded* it). Here, the limiting clause (*i.e.*, "former and present") appears *before* the list of nouns that it modifies (*i.e.*, "shareholders, members, officers . . . employees"), rendering the "rule of the last antecedent" both grammatically and logically inapplicable. *See id*. Second, where, as here, a contract is on its face unambiguous, it should read according to its plain meaning. *See, e.g., Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011) ("When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms.").

2. <u>Plaintiffs Have Failed to Establish That They Suffered Damages</u>

Plaintiffs have also failed to establish that they suffered damages as a result of Fromkin's alleged breach. Even assuming that Fromkin did "assist or facilitate" Ship in the Ship Litigation, Plaintiffs have not adduced any evidence showing that actions taken by Fromkin adversely affected the outcome of the Ship Litigation. Specifically, Plaintiffs have not shown that Fromkin's actions increased costs to them in the Ship Litigation, nor have they shown that the Ship Settlement was larger than it otherwise would have been absent Fromkin's involvement. Plaintiffs' bare assertion that they were damaged as a result of Fromkin's alleged actions is in insufficient to combat a motion for summary judgment. *See Celotex Corp.*, 477 U.S. at 323.

Because Plaintiffs have not demonstrated that Fromkin breached the subject Covenant in the Release, nor that they were damaged as result, Fromkin's motion for summary judgment on this claim is granted.

B. Unjust Enrichment

Plaintiffs allege that by breaching the subject covenant in the Release, Fromkin was unjustly enriched in the form of the $75,000 payment he received in exchange for executing the Release. To assert a viable claim for unjust enrichment under New York law, a claimant must allege facts establishing: "(1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir. 2000) (internal quotations omitted). Plaintiffs' claim fails for two simple reasons. First, unjust enrichment is an equitable remedy that is available only in cases where there is no contract between the parties. *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523, 530 (S.D.N.Y. 2007). Here it is undisputed that there was a valid contract between the parties that was meant to govern the specific conduct at issue in this litigation, namely Fromkin's involvement in litigation against King Biscuit. Thus, Fromkin's alleged wrongdoing is properly pursued under a breach of contract claim, not an unjust enrichment claim. Second, as discussed above, there is no evidence that Fromkin assisted or facilitated Ship, thereby benefitting at the Plaintiffs' expense. For these reasons, Fromkin's motion for summary judgment on this claim is granted.

C. Fraudulent Misrepresentation

Plaintiffs also allege that Fromkin made fraudulent misrepresentations when he told Plaintiffs "that he would not aid or facilitate any third parties in bringing claims against them." (Compl. (Dkt. 1) ¶ 21.)

Under New York law, a common law fraud claim is generally nonviable if it is duplicative of a claim for breach of contract. *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 20 (2d Cir. 1996); *Sekisui Am. Corp. v. Hart*, 12 CIV. 3479 SAS, 2012 WL 5039682, at *3 (S.D.N.Y. Oct. 17, 2012); *Clifton v. Vista Computer Servs.*, LLC, No. 01

Civ. 10206, 2002 WL 1585550, at *2 (S.D.N.Y. July 16, 2002). Fraud claims are duplicative where "the conduct allegedly violating the implied covenant is also the predicate for a claim for breach of covenant of an express provision of the underlying contract." *Telecom Int'l. Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001); *see also CSI Inv. Partners II, L.P. v. Cendant Corp.*, 507 F. Supp. 2d 384, 425 (S.D.N.Y. 2007) *aff'd,* 328 F. App'x 56 (2d Cir. 2009) (citations and quotation marks omitted). However, a plaintiff may bring a fraud claim alongside a breach of contract claim if a plaintiff "(i) demonstrate[s] a legal duty separate from the duty to perform under the contract; or (ii) demonstrate[s] a fraudulent misrepresentation collateral or extraneous to the contract." *Bridestone/Firestone, Inc.*, 98 F.3d at 20; *see also Intellectual Capital Partner v. Institutional Credit Partners LLC,* No. 08 Civ 10580(DC), 2009 WL 1974392, at *8 (S.D.N.Y. July 8, 2009).

Here, there are no allegations whatsoever that Fromkin made any representations *outside* of the Release. Thus, Plaintiffs common-law fraud claim duplicates their breach of contract claim. Put another way, Plaintiffs fraudulent misrepresentation claim "is simply a breach of contract claim in the tort cloth of (factually unsupported) allegations of [Fromkin's] intent to breach" the subject covenant in the Release. Therefore, this claim is duplicative and nonviable, and Fromkin's motion for summary judgment as to this claim is granted.

### III.     Fromkin's Motion for Sanctions

Fromkin urges the Court to award him costs and attorneys' fees pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") because "this litigation is entirely frivolous, and was clearly instituted for the sole purpose of harassing Fromkin." (Sanc. Br. (Dkt. 13-4) at 1.)

Rule 11 provides that a court may impose sanctions either by motion or by its own initiative when a party submits a pleading, motion, or other papers to the court without evidentiary support or for "any improper purpose." Fed. R. Civ. P. 11(b)-(c); *see also Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012) ("Sanctions may be—but need not be—imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous."). "[E]ven when a district court finds a violation of Rule 11, 'the decision whether to impose a sanction for a Rule 11(b) violation is . . . committed to the district court's discretion.'" *Ipcon Collections LLC*, 698 F.3d at 63 (quoting *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004)). District courts must exercise restraint in determining whether sanctions are necessary. *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 387 (2d Cir. 2003) (citation omitted).

At bottom, Fromkin's argument is that Plaintiffs' motion is so completely meritless that the Court should conclude that it was brought solely to harass. The Court agrees, as described above, that Plaintiffs' claims are meritless. However, Fromkin provides no evidence—for example, statements demonstrating an improper motive—to establish that action was instituted solely for the purpose of harassing Fromkin or any other improper purpose.[6] Fromkin's sanctions motion merely reiterates what the Court has already decided more appropriately on summary judgment, namely that Plaintiffs' claims should be dismissed.

"[I]n light of the seriousness with which the Court regards the imposition of sanctions," deficient claims, without more, will not sustain a motion for sanctions. *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 10-CV-1341 PKC WDW, 2014 WL 2534833, at *16 (E.D.N.Y.

---

[6] Indeed, although Plaintiffs' argument that Ship does not qualify as a former employee under the Release is patently incorrect, his refusal to sign the affidavit attesting to Fromkin's non-involvement in the Ship Litigation provided a basis for Plaintiffs to suspect Fromkin's involvement, even if that suspicion proved to be unfounded.

June 5, 2014). Because the Court cannot impute an improper motive to Plaintiffs absent supporting evidence, Fromkin's motion for sanctions is denied.

## CONCLUSION

For the foregoing reasons, Fromkin's motion for summary judgment (Dkt. 12) is GRANTED; and Fromkin's motion for Rule 11 sanctions (Dkt. 13) is DENIED. The Clerk of the Court is respectfully directed to enter judgment in favor of Defendant Fromkin, and close this case.

SO ORDERED:

/s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: July 25, 2014
Brooklyn, New York